CARL W. BRAZNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22587.    Promulgated February 28, 1951.

*Samuel J. Kanner, Esq.*, for the petitioner.
*Newman A. Townsend, Jr., Esq.*, for the respondent.

**OPINION.**

TURNER, *Judge:* It is the claim of the petitioner that the $5,500 paid by him to Davis in satisfaction of the above-described judgment constituted a proper deduction from gross income, under section 23 (a). (2) of the Internal Revenue Code, as an ordinary and necessary expense paid in the preservation of property held for the production of income. It is the claim of the respondent that the expenditure' here was essentially a sales commission, that a sales commission is capital in character and, for the purpose of arriving at the gain realized upon the sale of the property to which it is related, it is to be applied against the selling price along with the original cost or other basis.

If, on the facts here, the expenditure is to be regarded as a sales commission we think it clear that the respondent's view properly reflects the law, for we consider it settled law that commissions on purchases and sales of investment property by a taxpayer for his own account are to be applied as capital charges in arriving at the gain or loss realized or sustained upon sale of the property and are not expense items deductible from gross income. *Spreckels* v. *Commissioner*, 315 U. S. 626; *Helvering* v. *Winmill*, 305 U. S. 79; *Victoria Paper Mills Co.*, 32 B. T. A. 666; *Elvie N. Hazlett*, 23 B. T. A. 303; *J. Edward Sullivan*, 23 B. T. A. 147; *D. F. McCrimmon*, 20 B. T. A. 384; *Mrs. E. A. Giffin*, 19 B. T. A. 1243; *Seletha O. Thompson*, 9 B. T. A. 1342; and *Dalriada Realty Co.*, 5 B. T. A. 905.

It is true that in the above cases the question was whether the commissions were deductible under section 23 (a) (1) as ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, whereas in the instant case, the question is whether the expenditure, a commission or not, was "ordinary and

necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income" under section 23 (a) (2). It is to be noted, however, that in the above cases the deduction of commissions was not disallowed because such expenditures were not "ordinary and necessary" but because they were capital in character and by the same token it appears equally clear that commissions would not be deductible under section 23 (a) (2). The Committee on Finance in reporting to the Senate the provision which became section 23 (a) (2) of the Code said: "A deduction under this section is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of the deduction under section 23 (a) (1) (A) of an expense paid or incurred in carrying on any trade or business." Report 1631, 77th Congress, 2nd Session, p. 88. And in *Bingham's Trust* v. *Commissioner*, 325 U. S. 365, the Supreme Court said "the effect of section 23 (a) (2) was to provide for a class of nonbusiness deductions co-extensive with the business deductions allowed by section 23 (a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income." See also *Bowers* v. *Lumpkin*, 140 Fed. (2d) 927, wherein the court rejected the claim that legal expenses incurred and paid in defending or protecting title to property though not deductible from gross income under section 23 (a) (1) are deductible under section 23 (a) (2). It had been urged that the term "ordinary and necessary expenses" as used in section 23 (a) (2) is broader than in section 23 (a) (1) and that the provision allowing deductions of expenditures for the "management, conservation, or maintenance of property held for the production of income," and especially of expenditures for the "conservation" of such property, is particularly pertinent to expenditures incurred in protecting income producing property from adverse attack. The court held that such expenditures were not items of deduction but constituted "a capital charge which should be added to the cost of the property and taken into account in computing the capital gain or loss in case of a subsequent sale," and that Congress, in section 23 (a) (2), had not expanded the meaning and scope of the term "ordinary and necessary expense" to include such costs. To the same effect are *James M. Straub*, 13 T. C. 288, and *Don A. Davis*, 4 T. C. 329; also see *Sayers F. Harman*, 4 T. C. 335.

Aside from a statement of the conclusion sought, namely, that the payment of the judgment was an expenditure in the preservation of the hotel properties, and, therefore, deductible under section 23 (a)

(2), the argument of the petitioner's counsel seems to be that the payment in question was not a commission and should not be treated as if it were, because the petitioner has testified that the hotel properties were never listed with Harold R. Davis, Inc., or with any real estate broker, or with the Real Estate Board of Miami Beach; that he had no agreement or contract with Davis for the sale of the properties, and that at or prior to the time the suit was instituted by Davis, the properties were not for sale, and in that situation, it would be unreasonable to disallow the deduction, for to do so "would be to require petitioner to pay a double real estate commission and, further, there is no other provision in the Internal Revenue Code under which the payment of this judgment could have been deducted from petitioner's income."

It is at once apparent that such argument is beside the point and is no answer to our question here. Deductions are matters of legislative grace, and the absence of a statutory provision providing for the deduction of an expenditure of a particular character not only supplies no basis for judicial allowance of a deduction therefor, but, to the contrary, indicates the nondeductibility of the item. Furthermore, the disallowance of the deduction does not mean that the petitioner is to receive no benefit, taxwise, from the expenditure, since if the expenditure constituted a capital charge, it is to be applied against the selling cost of the properties. See *Mrs. E. A. Giffin, supra,* dealing with the proper treatment of sales commissions where real property was sold on the installment basis. Furthermore, the evidence of record showing the nature, character and result of the suit by Davis is in refutation of the petitioner's testimony, and indicates that the petitioner was obligated to pay to Davis an amount as commission for negotiation of a sale for the hotel properties even though he refused to make the sale negotiated by Davis. Stated as favorably for petitioner as we are able, the payment here in question was a payment of damages for breach of the obligation to pay a sales commission.

Our question, then, is whether, on the facts here, the amount paid in satisfaction of the judgment was of such character as to place it in the same category as expenditures incident or essential to the acquisition, continued ownership and ultimate disposition of the properties, which expenditures are capital in character and are to be taken into account in computing the capital gain or loss in case of a subsequent sale; or whether the payment more nearly resembles, and should fall in the category of, expenditures having to do with the management of the properties and maintenance, upkeep and preservation for the further or subsequent production of income, in which case the expenditure is deductible under section 23 (a) (2).

In *Bingham's Trust* v. *Commissioner, supra,* the Trust had claimed as a deduction under section 23 (a) (2) amounts paid as counsel fees

and expenses in an unsuccessful proceeding against the Commissioner of Internal Revenue on his determination of a deficiency in income tax against the Trust. The deficiency determined was based on the proposition that the Trust had realized gain upon the disposition of securities. The facts were that under the trust instrument the trustees were required to make a distribution of $5,000,000 to one of the beneficiaries. The distribution was not made in cash, but in securities, having a value at the time of distribution of $5,000,000, but having a basis for gain or loss in the hands of the Trust of less than $5,000,000. The Commissioner of Internal Revenue had determined that the Trust upon the disposition of the said securities had realized gain equal to the difference between the basis of the securities in the hands of the Trust and $5,000,000, the cash distribution prescribed by the trust instrument. The determination of the deficiency was upheld and the trustees sought to deduct the counsel fees and cost of litigating the deficiency in question. The deficiency itself was not deductible because of the statutory provision specifically barring the deduction of income taxes. As to the counsel fees and expenses of the income tax deficiency proceeding, this Court found as a fact and held that they represented "expenses of management or conservation of the trust fund" and accordingly were within the provisions of section 23 (a) (2). The decision of this Court was reversed by the United States Court of Appeals for the Second Circuit. It was of the view that, on the facts, it could not be said that the expenditures sought to be deducted could properly be classified as expenses for the production of income, and, even though it left undisturbed the finding of the Tax Court that the expenditures had been made for the management and conservation of the trust property, it held that the fees and expenses in question could not be said to have been made for the management of property held for the production of income since the transaction giving rise to the litigation was the distribution and parting with the property, not its holding for the production of income. The Supreme Court, in reversing the Court of Appeals and affirming the Tax Court, was of the view that, in order to qualify as expenditures for the management, conservation or maintenance of property held for the production of income, under section 23 (a) (2), such expenditures "need not relate directly to the production of income for the business. * * * Section 23 (a) (2) thus treats the trust as an entity for producing income comparable to a business enterprise, and like section 23 (a) (1) permits deductions of management expenses of the trust, even though the particular expense was not an expense directly producing income. It follows that all of the items of expense here in question are deductible if, as the Tax Court has held, they are expenses of management or conservation of the trust fund, whether their expenditure did or did not result in the production of income." The Supreme Court

went on to point out that the management duties of the trustees were not only to hold the property for the production of income and to collect the income, but also, in administering the trust, to distribute the income and principal, from time to time, as prescribed in the trust instrument and that performance of each of such duties was an integral part of carrying out the trust enterprise, and, accordingly, that the costs of distribution "were quite as much expenses of a function of 'management' of the trust property as were expenses incurred in producing the trust income." The Court then referred to the finding of the Tax Court that the expenditures in question were ordinary and necessary expenses of management of the trust property and stated that "The Tax Court could find as a matter of fact, as it did, that the expenses of contesting the income taxes were a proximate result of the holding of the property for income. And we cannot say, as a matter of law, that such expenses are any less deductible than expenses of suits to recover income. Cf. *Commissioner* v. *Heininger, supra.*"

In the instant case, the hotel properties were held for the production of income no less than were the trust properties in *Bingham's Trust, supra.* It is true, as in *Bingham's Trust,* that the payment in and of itself was not for the production of income. It was the payment of the amount fixed by the jury as damages to Harold R. Davis, Inc., for petitioner's refusal to pay a commission on a sale negotiated by Davis, which sale petitioner had refused to carry out. By reason of this refusal, a better and more profitable sale was later negotiated and consummated. In the interval the properties presumably were still producing rental income, due to government use and occupation. In the circumstances, the expenditure was certainly ordinary and necessary, *Commissioner* v. *Heininger,* 320 U. S. 467, and the fact that an established result of the refusal to sell to Claman was the subsequent realization of capital gain rather than ordinary income does not, in and of itself, require a classification of the expenditure as a capital charge. The Senate Finance Committee in its report, *supra,* at page 87, pointed out that the deductibility of management, conservation or maintenance expenses of property held for the production of income was not limited to such expenses where the income contemplated was recurring income but applied "as well to gain from the disposition of property." The Supreme Court, in *Bingham's Trust,* likewise indicated an understanding that the deduction of expenses was not limited to those related to properties held for the production of recurring income, but was also extended to expenses in connection with the management, conservation, or maintenance of property held for the production of capital gain.

It is accordingly our conclusion that for the purpose of applying section 23 (a) (2), the expenditure here is not properly to be regarded

as a capital charge but is to be treated as an expense in the management, conservation or maintenance of property held for the production of income, within the meaning of section 23 (a) (2).

For the record, the parties stated that agreements had been reached with respect to all of the other issues in this proceeding and that effect would be given thereto under Rule 50.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, concurring: The verdict of the jury for Davis and against the petitioner must be taken as conclusive proof that there was an agreement between the petitioner and Davis authorizing the latter to obtain a purchaser for the property on a commission basis. That was a transaction entered into by the petitioner for profit. Davis completed his side of the bargain but the petitioner decided it would be to his best interests financially not to sell, so he breached his agreement and sustained a loss of the amount which the court required him to pay Davis. That transaction was not connected with the actual sale of the property. Thus, whether or not the amount was deductible under section 23 (a) (2), nevertheless, it was deductible in full under section 23 (e) (2).